Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| JOSHUAN CARLOS SUÁREZ<br><br>APELANTE<br><br>V.<br><br>ALFREDO SOEGAARD E HIJOS INC.<br><br>APELADOS | TA2026AP00166 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm. CA2024CV00227<br><br>Sobre: Ley 80 Despido Injustificado/Ley 2 Discrimen por Religión Ley 100 |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez, Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 29 de abril de 2026.

### I.

El 17 de febrero de 2026, el señor Joshuan Carlos Suárez Benítez (apelante o señor Suárez Benítez) presentó un *Escrito Apelativo* en el que nos solicitó que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI o foro primario), el 6 de febrero de 2026, notificada y archivada digitalmente en autos el mismo día.[1] Mediante dicho dictamen, el TPI declaró, sumariamente, No Ha Lugar la *Querella* radicada por el apelante.

En vista de que el contenido del escrito estaba parcialmente ilegible, por el sello digital que estampa el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA), el 19 de febrero de 2026, emitimos una *Resolución* en

---

[1] Véase entrada núm. 48 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

la que le concedimos al apelante hasta el 23 de febrero de 2026 para someter nuevamente el recurso.[2]

Ese mismo día, el apelante presentó una *Moción en cumplimiento de orden* y anejó nuevamente el *Escrito Apelativo*, cumpliendo con lo ordenado.[3]

Así las cosas, el 20 de febrero de 2026, emitimos una *Resolución* en la que le concedimos a la parte apelada hasta el 24 de marzo de 2026 para presentar su alegato en oposición.[4]

En cumplimiento de orden, el 24 de marzo de 2026, Alfredo Soegaard e Hijos, Inc. (Soegaard o parte apelada) presentó un *Alegato de la parte apelada*.[5] Suplicó que confirmemos la *Sentencia* apelada.

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes para su atención.

**II.**

El caso de marras tuvo su génesis el 26 de enero de 2024, cuando el señor Suárez Benítez presentó una *Querella* sobre despido injustificado al amparo de la *Ley sobre Despidos Injustificados*, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a *et seq.* (Ley Núm. 80), y discrimen, por religión, al amparo de la *Ley Antidiscrimen de Puerto Rico*, Ley Núm. 100 de 30 de junio de 1959, 29 LPRA sec. 146 *et seq.*, bajo el procedimiento sumario de la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 *et. seq.* (Ley Núm. 2).[6]

Según las alegaciones de la *Querella,* este trabajó para Soegaard desde febrero de 2022 hasta el 13 de febrero de 2023,

---

[2] Véase entrada núm. 2 en el expediente digital del caso en el SUMAC-TA
[3] Íd., entrada núm. 3.
[4] Íd., entrada núm. 4.
[5] Íd., entrada núm. 6.
[6] Véase entrada núm. 1 en el expediente digital del caso en SUMAC-TPI.

cuando fue despedido. Respecto a los hechos que dieron base a la reclamación, mencionó que, el gerente del supermercado donde laboraba lo reunió para discutir una queja que recibió por parte de un cliente sobre alegados comentarios religiosos que lo hicieron sentir incómodo. Según el apelante indicó, después de la discusión en donde el señor Suárez Benítez negó haber hecho tales comentarios, el gerente procedió a entregarle una amonestación y, toda vez que el apelante se negó a firmarla, por no estar de acuerdo con la información allí manifestada, el gerente le ordenó a ponchar y a marcharse del lugar de trabajo. Por tales hechos, el apelante solicitó una indemnización por concepto de mesada, daños económicos y emocionales.

El 25 de abril de 2024, la parte apelada presentó una *Contestación a Querella.*[7] Primeramente, adujo que la sala con competencia para atender la *Querella* era la Sala Superior de Fajardo, toda vez que, de las propias alegaciones de dicho reclamo, las partes se ubican en el municipio Río Grande, que pertenece a la región judicial de Fajardo.

En cuanto a las alegaciones, alegó afirmativamente que el apelante no fue despedido, sino que abandonó libre y voluntariamente su empleo. Arguyó que este no se presentó a trabajar, luego de que se le impartiera una amonestación escrita, por un incidente con un cliente. Asimismo, alegó afirmativamente que, al apelante no le aplican las disposiciones de la Ley Núm. 80, *supra,* ya que al momento de que culminó su relación laboral con la parte apelada, este se encontraba dentro del periodo probatorio de nueve (9) meses. Sostuvo que, en la alternativa, su despido se debió a una razón legítima y no discriminatoria. Soegaard negó conocer la

---

[7] Íd., entrada núm. 5.

religión que practicaba el apelante y que el despido haya sido por ello.

Tras varios trámites procesales, innecesarios pormenorizar, incluyendo el traslado del caso a la Sala Superior de Fajardo por razones de competencia, el 29 de abril de 2025, la parte apelada presentó una *Moción de Sentencia Sumaria* para solicitar la desestimación de la *Querella*.[8] Arguyó que no existen hechos materiales en controversia que ameriten la celebración de un juicio, ya que, la deposición del apelante y la prueba documental lo demuestran inequívocamente.

De entrada, la parte apelada alegó que no procede la causa de acción por despido injustificado toda vez que el apelante se encontraba en su periodo probatorio al momento de su destitución. Señaló, que este estaba sujeto a un periodo probatorio de nueve (9) meses, a vencer el 28 de marzo de 2023, y que su despido se dio el 21 de febrero de 2023. Por lo cual, sostuvo que no le aplican las disposiciones de la Ley 80, *supra*, por lo que no tiene que establecer que existió justa causa. Así las cosas, mencionó que el apelante no tiene derecho alguno a sus remedios, siempre que el despido no haya sido por razones discriminatorias, represivas o prohibidas por ley.

De otra parte, alegó que tampoco procede la causa de acción de discrimen por religión. Adujo que, la destitución del apelante fue por una razón legitima y no discriminatoria. Agregó que, la determinación de la gerente administrativa, para el despido, estuvo fundamentada en la conclusión de que el apelante abandonó su empleo y que no se tomó en cuenta la religión del apelante para tomar dicha decisión.

---

[8] Íd., entrada núm. 34.

Por su parte, el 27 de mayo de 2025, el apelante presentó una *Oposición a Solicitud de Sentencia Sumaria.*[9] Adujo que la solicitud de la parte apelada estaba plagada de deficiencias procesales y sustantivas, incumpliendo con los requisitos establecidos en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. Arguyó que la prueba sometida en apoyo a la solicitud de sentencia sumaria no es admisible por construir prueba de referencia al no ser presentada como un récord de negocio y que, también, las declaraciones juradas estaban plagadas de prueba de referencia al ser hechas por encargo. Asimismo, sostuvo que, la interpretación del patrono sobre que el apelante se encontraba bajo el periodo probatorio es incompatible con la ley, la cual no autoriza a que se discrimine en su contra. Además, manifestó que se pretende encubrir el hecho del despido mediante el alegado abandono de trabajo cuando el gerente del supermercado le ordenó no regresar a su puesto. Por ello, suplicó al TPI que denegara la solicitud de sentencia sumaria para que la controversia se adjudicara mediante una vista adjudicativa.

El 27 de junio de 2025, el apelante presentó una *Réplica a Oposición a Moción de Sentencia Sumaria.*[10] Arguyó que el apelante fue incapaz de refutar los hechos incontrovertidos establecidos en su solicitud de sentencia sumaria por lo que reiteró que procede la desestimación de la *Querella.*

El 31 de julio de 2025, la parte apelada presentó una *Dúplica.*[11] Insistió en que la justificación ofrecida por el patrono constituyó un mero pretexto y que la decisión de la supervisora para el despido estuvo contaminada por el prejuicio discriminatorio de un tercero.

---

[9] Íd., entrada núm. 38.
[10] Íd., entrada núm. 42.
[11] Íd., entrada núm. 44.

El 6 de febrero de 2026, el TPI emitió una *Sentencia* en la que declaró, sumariamente, No Ha Lugar la *Querella* presentada por el apelante.[12] En esta, formuló las siguientes determinaciones de hechos no controvertidos:

1. El Sr. Joshuan Carlos Suárez trabajó como empleado de limpieza o mantenimiento desde el 12 de mayo de 2020 hasta el 26 de febrero de 2022 en el Supermercado Econo en Río Grande que opera la parte querellada. Ese 26 de febrero, el querellante renunció a dicho puesto.

2. El 28 de junio de 2022, el querellante fue contratado nuevamente por la parte querellada para ocupar, a tiempo parcial, el puesto de "Tip Bagger" en el mismo supermercado en el área de Río Grande. Ese puesto estaba sujeto a un período probatorio de nueve (9) meses que vencía el 28 de marzo de 2023.

3. Así las cosas, el 13 de febrero de 202[3], el Sr. Luis Matta, Gerente del Supermercado Econo, dialogó con el querellante referente a una alegada queja que un cliente había dado del Sr. Joshuan Carlos Súarez (sic) por supuestamente haberle hablado de religión. El querellante negó hubiera hablado de religión al cliente, pero que sí le había indicado la frase "Dios te bendiga".

4. Como resultado de ese intercambio, el Sr. Matta decidió darle un "warning" al querellante habida cuenta que estaba prohibído hablar de religión durante horas laborales como política de la compañía para mantener un ambiente libre de discrimen por razones religiosas.

5. En su oficina, el Sr. Matta entregó al querellante una amonestación escrita sobre el incidente acontecido. Luego de leerla, el Sr. Joshuan Carlos Suárez indicó que no estaba de acuerdo con la amonestación pues, según es su contención, no era cierto lo alegado por el cliente y se negó a firmar el documento.

6. El Sr. Matta procuró la presencia de la Sra. Morayma Martínez, Supervisora del área de Front End del Supermercado para que firmara el documento, en presencia de ambos, como testigo que la amonestación se había discutido frente al querellante y éste se había negado a firmarla. El querellante no estaba de acuerdo y se opuso a que la Sra Martínez firmara el documento.

---

[12] Íd., entrada núm. 48.

7. Ante ello, el Sr. Matta le indicó al querellante que ponchara y se fuera; que no lo quería ver más por la tienda. El Sr. Joshuan Carlos Suárez [El 4 de diciembre de 2020, el Sr. Colón Ledée solicitó la anotación de Hogar Seguro el Registro de la Propiedad sobre el referido (sic)] pochó y se retiró del lugar.

8. Posterior a ello, el bb (sic) de bb (sic) de 2024, la Sra. Katherine Ramos Soegaard, Gerente Administrativo, emitió escrito terminando el empleo del Sr. Joshuan Carlos Suárez por no haberse reportado a sus turnos asignados de trabajo entre el 13 y el 19 de febrero de 2025.

El TPI destacó que el apelante, a la fecha de su despido, ya fuera el último día que estuvo en el supermercado o cuando se le dio de baja por no presentarse a los siguientes turnos, se encontraba en el periodo probatorio. Por lo que, el foro primario resolvió que la parte apelada no necesitaba justa causa para despedir al señor Suárez Benítez y este último no se beneficia de la indemnización establecida por la Ley Núm. 80, *supra*.

De otro lado, concluyó que, la acción de amonestar al apelante y este oponerse a firmar y a que un testigo firmara en su lugar, no está basada en una cuestión religiosa sino en la negativa del apelante a recibir dicha amonestación. Asimismo, determinó que, el hecho de que la amonestación estuviere basada en una alegación de una manifestación religiosa hecha por el apelante a un cliente en horas laborables no demuestra que ocurrió un discrimen religioso. Por lo cual, declaró No Ha Lugar ambas causas de acción.

Inconforme, el 17 de febrero de 2026, el apelante presentó el recurso de apelación de epígrafe en el que formuló los siguientes señalamientos de error:

**Erró el Tribunal al determinar que no existe controversia genuina de hechos materiales respecto al motivo del cese de empleo del señor Suárez.**

**Erró al admitir y dar peso probatorio a declaraciones juradas plagadas de prueba de referencia y percepciones subjetivas.**

**Erró al aplicar mecánicamente el periodo probatorio para desestimar la Ley 80, ignorando que el discrimen por religión es independiente de dicha protección.**

**Erró al no reconocer la aplicación de la doctrina "cat's paw" ante la evidente influencia del Gerente Matta en la decisión final de la Gerente Ramos.**

Alegó que la controversia del caso de epígrafe no debe resolverse mediante sentencia sumaria, dado que, depende de la credibilidad de los testigos y de la inferencia de intención discriminatoria. Adujo que, el foro primario erró al basar su sentencia en prueba inadmisible por constituir las declaraciones juradas prueba de referencia y porque no se demostró que la evidencia fuera preparada en el curso ordinario de la actividad empresarial. También, arguyó que el TPI cometió un error manifiesto al confundir el alcance limitado del periodo probatorio bajo la Ley Núm. 80, *supra*, con una inmunidad absoluta contra reclamaciones de discrimen.

El 24 de marzo de 2026, la parte recurrida presentó su oposición. Sostuvo que, tras concluir el descubrimiento de prueba, resultó claro que no existían controversias de hechos materiales y que las controversias ante el foro primario fueron estrictamente jurídicas. Por lo cual, adujo que actuó correctamente el TPI al resolver de forma sumaria.

En particular, aludió a que, el foro primario determinó correctamente que no había controversias en cuanto a que el apelante se encontraba en su periodo probatorio y al desestimar la causa de acción por despido injustificado. Asimismo, manifestó que, el TPI correctamente concluyó que no existía controversias en

cuanto a que el despido se debió por una razón legítima y no discriminatoria, a saber, por abandono de trabajo.

En adelante, pormenorizaremos el derecho aplicable al presente recurso.

**III.**

**A.**

La Regla 36 de Procedimiento Civil, *supra*, regula todo lo concerniente a la moción de sentencia sumaria. Dicho mecanismo procesal se utiliza en aquellos litigios en los que no existen controversias genuinas de hechos materiales y, por consiguiente, no resulta necesaria la celebración de un juicio en su fondo, en la medida en que solo resta por dilucidar determinadas controversias de derecho. ***Negrón Castro v. Soler Bernardini***, 2025 TSPR 96, 216 DPR ___ (2025); ***BPPR v. Zorrilla y otro***, 214 DPR 329, 338 (2024). Su propósito principal es la solución justa, rápida y económica de los litigios civiles. ***SLG Fernández-Bernal v. RAD-MAN et al.***, 208 DPR 310, 334-335 (2021).

El promovente podrá solicitar al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra*, R. 36.1 y R. 36.2. La moción de sentencia sumaria debe contener: una exposición breve de las alegaciones de las partes, los asuntos litigiosos en controversia, la causa de acción sobre la cual se solicita la sentencia sumaria, una relación concisa y organizada en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia, con indicación de los párrafos o páginas de la prueba documental donde se establecen los mismos, la argumentación del derecho aplicable y el remedio que se solicita. Regla 36.3 (a) de Procedimiento Civil, *supra*, R. 36.3(a).

El promovente de una sentencia sumaria deberá establecer, mediante declaraciones juradas o con prueba admisible en evidencia, que no existe controversia real respecto a hechos materiales de la controversia. Regla 36.1 de Procedimiento Civil, *supra*; ***Meléndez González et al. v. M. Cuebas***, 193 DPR 100, 110 (2015).

De igual forma, la parte que se opone a la sentencia sumaria tiene que cumplir con las exigencias de la Regla 36. En particular, debe enumerar aquellos hechos materiales de buena fe controvertidos y aquellos sobre los cuales no hay controversia. Regla 36.3 (b) de Procedimiento Civil, *supra*, R. 36.3(b). En ambos casos, por cada hecho, se tienen que indicar los párrafos o páginas de la prueba documental que establecen o impugnan ese hecho. Íd.

En específico, sobre las declaraciones juradas presentadas en apoyo o en oposición de una solicitud de sentencia sumaria, la Regla 36.5 de Procedimiento Civil, *supra*, 36.5, preceptúa que se basarán en el conocimiento personal de quien declara en ellas. Además, dispone que "[c]ontendrán aquellos hechos que serían admisibles en evidencia y demostrarán afirmativamente que el o la declarante está cualificado para testificar en cuanto a su contenido". Íd.

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. ***Meléndez González et al. v. M. Cuebas***, *supra*, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. ***Ramos Pérez v. Univisión***, 178 DPR 200, 213 (2010).

Nuestro máximo foro ha establecido que no es aconsejable dictar una sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o que envuelvan aspectos subjetivos tales

como la intención, los propósitos mentales o la negligencia o cuando el factor de credibilidad sea esencial para dilucidar la controversia del alegado discrimen. ***Segarra Rivera v. Int'l. Shipping et al.***, 208 DPR 964, 980 (2022); ***Aponte Valentín v. Pfizer Pharmaceuticals***, *LLC*, 208 DPR 263, 278 (2021). Sin embargo, "nada impide que se utilice el mecanismo de sentencia sumaria en reclamaciones que requieran elementos subjetivos o de intención cuando surge de los documentos que se considerarán en la solicitud de sentencia sumaria la inexistencia de una controversia en torno a los hechos materiales". ***Cruz Cruz v. Casa Bella Corp***., 213 DPR 980, 993 (2024).

De otra parte, es norma de derecho reiterada y establecida que los foros revisores nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. ***Batista v. Sucn. Batista et al.***, 2025 TSPR 93, 216 DPR __ (2025); ***Cruz Cruz v. Casa Bella Corp***., supra, pág. 994. Sin embargo, los tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. ***Birriel Colón v. Econo y otro***, 213 DPR 80, 91 (2023); ***Segarra Rivera v. Int'l. Shipping et al.***, supra, pág. 981; ***Meléndez González et al. v. M. Cuebas***, *supra*, págs. 114–116. La revisión de los foros apelativos conlleva examinar de *novo* el expediente del caso de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro primario. ***Birriel Colón v. Econo y otro***, supra, pág. 91.

**B.**

El Art. III, Sec. 16, de la Constitución del Estado Libre Asociado de Puerto Rico consagra el derecho de todo trabajador a seleccionar

libremente su ocupación, así como renunciar a ella. **Cont. ELA**, LPRA, Tomo 1.

Dentro de ese marco constitucional, la Asamblea Legislativa promulgó la Ley Núm. 80, *supra*, el principal estatuto de protección al exempleado que ha sido privado de su trabajo sin justificación y como mecanismo para desalentar dicha práctica mediante el pago de una indemnización por parte del patrono. ***González Méndez v. Acción Social et al.,*** 196 DPR 213, 229 (2016). Esto, a su vez, responde al interés apremiante del Estado de regular las relaciones obrero-patronales y de evitar las prácticas injustas del trabajo, así como una clara política pública de proteger los derechos de los trabajadores. ***Díaz v. Wyndham Hotel Corp.,*** 155 DPR 364, 374 (2001); ***Arroyo v. Rattan Specialties, Inc.,*** 117 DPR 35 (1986). Y es que, de ordinario, el despido implica para la persona afectada la pérdida del sustento y del principal medio de acceso a los artículos y servicios indispensables del día a día. Íd.

Ahora bien, la Ley Núm. 80, *supra*, no prohibió el despido de forma absoluta, sino que le impuso al patrono un elemento disuasivo para no despedir al obrero sin justa causa. De esa forma, un patrono puede despedir a un empleado sin causa alguna y estará sujeto al pago de una mesada, pero, para evitarlo, tendrá que demostrar la existencia de una justa causa para la destitución. ***Romero et als. v. Cabrer Roig et als.,*** 191 DPR 643, 651 (2014).

Así, el Art. 1 de la Ley Núm. 80, *supra,* sec. 185a, prescribe que:

> Todo empleado que trabaja para un patrono mediante remuneración, contratado sin tiempo determinado, que fuere despedido sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono por concepto de indemnización por despido lo siguiente:

> (a) Una cantidad equivalente a tres (3) meses de sueldo por concepto de indemnización, **siempre y cuando haya culminado el periodo probatorio aplicable según se dispone en esta Ley, o el periodo probatorio distinto que las partes hayan estipulado**; y
>
> (b) Una cantidad equivalente a dos (2) semanas de sueldo por cada año completo de servicio. (Énfasis nuestro).

Este resarcimiento se conoce comúnmente como "la mesada" y constituye un remedio exclusivo disponible para los empleados despedidos injustificadamente, en tanto no existan otras causas de acción independientes al despido. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, 209 DPR 759, 771 (2022); *León Torres v. Rivera Lebrón*, 204 DPR 20, 36-37 (2020).

Entretanto, el Art. 2 de la Ley Núm. 80, *supra,* sec. 185b, dispone que "[s]e entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono". Ahora bien, el Art. 8 de la Ley Núm. 80, *supra*, sec. 185h, expresa que el despido de un empleado que se encuentra en periodo probatorio no estará sujeto a los requisitos de indemnizaciones establecidos por esta Ley.

De otra parte, la *Guía para la Interpretación de la Legislación Laboral de Puerto Rico* del Departamento del Trabajo y Recursos Humanos establece que la terminación de un empleo, aunque no se tenga que articular justa causa porque el empleado se encuentre en un periodo probatorio, no podrá ser por razones discriminatorias ya que implicaría una transgresión a otro estatuto. Sección 9.6, pág. 143.

**C.**

En el ámbito laboral, la Ley Núm. 100, *supra*, prohíbe, entre otros, el discrimen por razón de religión. Con el fin de brindar una protección eficaz en la relación de empleo, esta ley le impone responsabilidad civil y criminal a todo patrono que discrimine en

contra de todo aspirante de empleo o empleado. Véase, Art. 1 de la Ley Núm. 100, *supra,* sec. 146; ***Jiménez Soto v. Carolina Catering Corp.***, 2025 TSPR 3, 215 DPR __ (2025). A pesar de que el estatuto no define el término discrimen, nuestro más Alto Foro ha expresado que existe discrimen "cuando ocurre un trato desigual injustificado; es decir, cuando alguna persona sufre una desigualdad por prejuicio o por arbitrariedad, sin que exista un fundamento razonable para la falta de trato igual". ***Meléndez v. Asoc. Hosp. del Maestro***, 156 DPR 828, 845 (2002).

No todo despido injustificado es discriminatorio a su vez; pero, todo despido discriminatorio sí es injustificado. ***Diaz v. Wyndham Hotel Corp.***, supra, pág. 387. Por ello, el empleado que reclama los remedios y beneficios de la Ley Núm. 100, *supra,* debe probar ciertos hechos básicos, para que así se configure la modalidad de discrimen reclamada. Íd.

El caso *prima facie* de discrimen se configura cuando el empleado establece que; (1) es miembro de un grupo protegido, (2) estaba cualificado para el trabajo, (3) fue despedido y (4) el patrono buscó reemplazarlo por otras personas con cualificaciones similares. ***Soto y otros v. Sky Caterers***, 2025 TSPR 3, 215 DPR ___ (2025). Una vez se activa la presunción, el patrono tiene que presentar evidencia admisible sobre la existencia de una razón legitima y no discriminatoria para la acción adversa. Íd. El patrono no tiene que convencer al juzgador de que la razón proferida es causa verdadera o que en estricto derecho es justa causa para el despido. Al patrono solo se le requiere presentar evidencia meramente suficientemente clara y específica para sostener que el motivo determinante no fue discriminatorio. Íd. Es entonces cuando el demandante tiene la oportunidad de demostrar, mediante preponderancia de la prueba, que la razón ofrecida es un pretexto para ocultar el discrimen intencional. Íd.

**IV.**

A tenor con la normativa jurídica pormenorizada, nuestra revisión de la sentencia sumaria es de *novo*, aunque limitada a la prueba documental presentada ante el TPI. A su vez, debemos examinar el expediente de la manera más favorable a la parte que se opone a la solicitud de sentencia sumaria. Véase, ***Meléndez González, et al. v. M. Cuebas***, *supra*, pág. 118.

De un estudio del expediente, determinamos que tanto la *Moción de Sentencia Sumaria* como su oposición, cumplieron con los requisitos de la Regla 36 de Procedimiento Civil, *supra*. Ahora bien, luego de una revisión exhaustiva del mismo, concluimos que existen hechos materiales en controversia que impiden la disposición del pleito de forma sumaria y ameritan la celebración de una vista evidenciaria. Del expediente y de la propia *Sentencia* apelada, surgen los hechos que están en controversia. Por lo cual, a tenor con las normas jurídicas aplicables, no procedía resolver el caso de epígrafe sumariamente.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso y de los argumentos esbozados por las partes, en correcta práctica adjudicativa apelativa, resolvemos que el TPI incidió al emitir la *Sentencia* apelada.

En este caso, el TPI analizó si el apelante tenía una causa de acción bajo la Ley Núm. 80, *supra*, y bajo la Ley Núm. 100, *supra*, por su despido. Al así hacerlo, resolvió que, Soegaard no tenía que demostrar justa causa para despedir al apelante ni este último estaba sujeto a los requisitos de indemnización establecidos en la Ley Núm. 80, *supra*, toda vez que el apelante estaba en periodo probatorio.

Los señalamientos de error del apelante se resumen a que, la prueba de la parte apelada es inadmisible y que erró el TPI al aplicar mecánicamente el periodo probatorio para desestimar la Ley 80,

*supra*, ignorando que el discrimen por religión es independiente de dicha protección. Además, sostiene que existen controversias de hechos materiales sobre el verdadero motivo del despido. Por lo que, según argumenta, el foro primario incidió al declarar No Ha Lugar la *Querella*.

En cambio, la parte apelada arguye que, el apelante no controvirtió los hechos propuestos como incontrovertidos y procede concluir que el señor Suárez Benítez estaba dentro de su periodo probatorio por lo que no tiene derecho a mesada y que el despido no fue por una razón discriminatoria.

En nuestro ordenamiento jurídico, la protección que ofrece la Ley Núm. 80, *supra*, está limitada a aquellos empleados que prestan servicios de forma regular y, excluye específicamente a aquellos trabajadores que son despedidos durante su periodo probatorio. Sin embargo, el despido no pudo haber sido discriminatorio.

Así que, aunque no es necesario que un patrono articule una justa causa para el despido de un empleado que no ha culminado su periodo probatorio, no puede ser despedido por razones discriminatorias prohibidas por la ley, como lo es el discrimen por religión. Por lo que, corresponde evaluar lo argüido por el apelante respecto a que la condición de periodo probatorio no exime de la causa de acción por discrimen.

Mediante su *Sentencia*, el foro primario estableció conforme al derecho aplicable que, el patrono puede despedir al empleado probatorio por cualquier razón, siempre y cuando no sea por razones discriminatorias y prohibidas por ley. En este caso, no está en controversia que el apelante se encontraba en el periodo probatorio al momento de su despido o, de cuando el patrono lo dio de baja por ausencias a sus turnos de trabajo. Ahora bien, no debemos perder de perspectiva que, según las alegaciones del apelante y tal cual declaró en su deposición, el gerente le manifestó que ponchara y se

fuera de la tienda porque no lo quería ver más. En ese sentido, el apelante entendió que había sido despedido en ese instante. Además, es la contención del apelante que, el gerente del supermercado le había manifestado que estaba cansado de su religión. Existen controversias entre los documentos sometidos al TPI.

Conforme al derecho pormenorizado precedentemente, el empleado tiene la carga inicial de probar sus alegaciones en reclamos de despido injustificado y discrimen, y, tras demostrarse un caso *prima facie*, el patrono debe ofrecer una justificación legítima y no discriminatoria para la acción adversa.

De un examen sosegado del expediente del caso, concluimos que, de la prueba sometida en apoyo a las mociones dispositivas <u>no</u> surge cual fue la verdadera razón para el despido.

Por lo anteriormente esbozado, corresponde revocar la *Sentencia* apelada. Por ello, tras determinar que existen hechos materiales en controversia, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, y exponer los hechos que están en controversia y los no controvertidos.

Los hechos controvertidos son: 1) cuál fue la verdadera causa del cese en el empleo del apelante y, 2) si el despido fue encubierto bajo la causa de abandono, motivado por su práctica religiosa y 3) la indemnización procedente, si alguna. Los mencionados hechos en controversia requieren de un desfile de prueba en una vista evidenciaria. Estos hechos son materiales y esenciales a la causa de acción de discrimen por creencias religiosas de la apelante.

La fecha de comienzo y de terminación en el empleo del apelante, así como que fue despedido en el periodo probatorio, no están en controversia. La mera alegación de que el apelante abandonó su empleo porque la expresión de "poncha y vete" se refería únicamente a ese día no es suficiente para derrotar la

posibilidad de que el despido se debió a su creencia religiosa, luego de que el gerente del supermercado haya recibido la queja por el cliente. Más aun, cuando de la declaración jurada del gerente, el señor Luis Matta, indicó que tomó en consideración para la amonestación que el apelante había sido orientado en ocasiones anteriores de no hablar de religión en el lugar de trabajo. Existe controversia en los documentos sometidos.

En consecuencia, devolvemos este caso al TPI para que se puedan dilucidar, a través de una vista evidenciaria, los hechos materiales en controversia precedentemente formulados. Adviértase que, en casos en que se alega que hubo discrimen en el empleo, el Tribunal Supremo ha señalado "la necesidad de establecer la intención del patrono, por lo que el factor credibilidad juega un papel importante en el resultado de la reclamación. Estos elementos generalmente no se pueden definir con certeza hasta que el juzgador de los hechos tenga oportunidad de ver a los testigos en el juicio". Véase, ***Segarra Rivera v. International Shipping Agency, Inc.***, supra, pág. 981.

**V.**

Por los fundamentos expuestos, se revoca la *Sentencia* apelada y se devuelve al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a lo aquí dispuesto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Álvarez Esnard concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones